**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2889-18T4

IN RE AMENDMENT REQUEST
TO INCREASE ENROLLMENT
OF CLASSICAL ACADEMY
CHARTER SCHOOL.

_____

Argued March 4, 2020 – Decided March 18, 2020

Before Judges Haas, Mayer and Enright.

On appeal from the New Jersey Department of Education.

Perry L. Lattiboudere argued the cause for appellant Clifton Board of Education (Adams Gutierrez & Lattiboudere, attorneys; Perry L. Lattiboudere, of counsel and on the briefs).

Fiona E. Cousland argued the cause for respondent Classical Academy Charter School of Clifton (Riker Danzig Scherer Hyland & Perretti LLP, attorneys; Brenda C. Liss, of counsel and on the brief; Fiona E. Cousland, on the brief).

Laurie L. Fichera, Deputy Attorney General, argued the cause for respondent Commissioner of Education (Gurbir S. Grewal, Attorney General, attorney; Donna Sue Arons, Assistant Attorney General, of counsel; Laurie L. Fichera, on the brief).

PER CURIAM

Appellant Clifton Board of Education (Clifton) appeals from a decision by respondent New Jersey Commissioner of Education (Commissioner), approving a request by respondent Classical Academy Charter School (Classical Academy) to amend its charter and increase student enrollment by sixty pupils starting in the 2019-2020 school year. Because the Commissioner's decision was not arbitrary or capricious and was amply supported by the record, we affirm.

Classical Academy, a charter school serving students in sixth, seventh, and eighth grade, is located in Clifton. It received charter approval in 1998. Maximum enrollment from 1998 until 2019 was 120 students. The school has been the recipient of the National Blue Ribbon Award for academic excellence, recognized as a Top Ten New Jersey School and a Title 1 Rewards School, and ranked the highest performing middle school in Passaic County.

Classical Academy submitted a charter renewal request to the Department of Education (Department) in September 2016. The Department evaluated the school under a Performance Framework based on its academic

performance, fiscal viability, and organizational stability.[1]   In accordance with the Charter School Program Act of 1995, N.J.S.A. 18A:36A-1 to -18 (CSPA), and implementing regulations, the Department "completed a comprehensive review of the school including, . . . the renewal application, annual reports, student performance on statewide assessments, a structured interview with school officials, public comments, and fiscal impact on sending districts in order to make a renewal decision." See N.J.S.A. 18A:36A-17 and N.J.A.C. 6A:11-2.3(b).

Based on the Department's review, the Commissioner issued a February 28, 2017 decision, renewing the school's charter for five years with the following maximum enrollments:

| Grade Level | 2017-2018 | 2018-2019 | 2019-2020 | 2020-2021 | 2021-2022 |
|---|---|---|---|---|---|
| 6 | 40 | 40 | 40 | 40 | 40 |
| 7 | 40 | 40 | 40 | 40 | 40 |
| 8 | 40 | 40 | 40 | 40 | 40 |
| Total | 120 | 120 | 120 | 120 | 120 |

---

[1] The "Performance Framework" is the Department's accountability system used to evaluate charter schools' performance and sustainability.  The Performance Framework consists of three sections:  academic, financial, and organizational. N.J.A.C. 6A:11-1.2.

Although the Commissioner approved charter renewal for Classical Academy, he placed the school on "organizational probation until February 28, 2018" for failure to meet certain indicators in the organizational section of the Performance Framework. As a condition of probation, Classical Academy was required to, and did, submit a plan to the Department, outlining steps to remedy the organizational deficiencies.

On May 16, 2018, the Commissioner rescinded Classical Academy's probationary status, finding it "made significant strides in addressing the deficiencies that lead to probation." The Commissioner concluded Classical Academy "satisfied the conditions of probation."

On October 15, 2018, Classical Academy sought to amend its charter to increase maximum approved enrollment from 120 to 180 students, adding one class of twenty students at each grade level in sixth, seventh and eighth grade for the 2019-2020 school year. In support of the application, Classical Academy maintained it demonstrated "evidence of consistent high academic performance, a full enrollment, a robust wait list,[2] and minimal student attrition." The school also represented it had "fiscal stability to support an enrollment increase," and

[2] Classical Academy reported an enrollment waiting list of over one hundred students, which continued "to grow daily."

 A-2889-18T4

"recently relocated to a new facility to accommodate the continued academic success" of its students.

On November 18, 2018, Classical Academy provided the following additional information in support of its request:

> Our decision to expand is grounded in providing a stellar educational option for the families of Clifton who are seeking public-school choices. Many Clifton parents often call our school requesting to enroll their children. However, as a result of reaching our maximum capacity at only 120 students, on numerous occasions, we have had to turn them down for the current school year. Moreover, several parents whose children's names are on the waiting list call in periodically to check for the possibility that a seat is available . . . .
>
> We currently have students still on the waiting list from the lottery we hosted this past school year who are still interested in attending Classical Academy. In addition, we also have new parents who have made inquiries about enrolling their children for the upcoming school year. There is a strong and positive demand on behalf of the families in the Clifton community to send their children to Classical Academy.

As further support for its request, Classical Academy described proactive measures taken since the Department's visit to the school in April 2017, including: relocating to a larger, renovated school facility with the capacity to provide additional programs; designing a new curriculum aligned with core curriculum standards; increasing professional development opportunities;

developing interim and formative assessments to inform student performance; implementing a quality individualized education program (IEP) to address students' behavioral, social, and academic needs; effecting an English Language Learners (ELL) policy; and establishing a "school operations coordinator" to further strengthen organizational capacity. The school also represented its curriculum maps were near completion in math, English, social studies, and science.

In the area of academic performance, Classical Academy reported its students outperformed middle school students statewide on the PARCC standardized tests in English and math. In addition, Classical Academy reported that 56% of its eight grade students scored "advanced proficient" on the NJASK science assessment for the 2016-2017 school year.

Clifton opposed Classical Academy's application in a December 20, 2018 one-page letter authored by the Superintendent of the Clifton School District (Superintendent). The Superintendent urged the Commissioner to deny the application for several reasons. He challenged Classical Academy's organizational stability because certain promised improvements had yet to be implemented and the school was still operating under an improvement plan. He also questioned Classical Academy's academic performance, contending

A-2889-18T4

students struggled in mathematics upon entering Clifton High School. The Superintendent further claimed Classical Academy's students entering the district's high school did not reflect the district's demographic profile, particularly ELL and special education students. The Superintendent also contended the proposed "increase in student population would remove an additional $750,000 from [Clifton's] proposed 2019-2020 budget, forcing the possible elimination of some key programs."

However, no supporting documents accompanied the Superintendent's objections to Classical Academy's request to amend its charter. Specifically, the objection letter lacked any details regarding the claimed financial impact to the district if Classical Academy's request to increase student enrollment was approved.

On February 1, 2019, the Commissioner issued a final decision, granting Classical Academy's application to increase its maximum enrollment. The Commissioner stated the Department reviewed Classical Academy's academic, organizational, and fiscal standing based on the Performance Framework, and considered the public comments, demand for seats, and fiscal impact of the expansion on the district.

Based on preliminary statewide assessment test results for the 2017-2018 school year, the Commissioner concluded Classical Academy "continues to be a high-performing charter school, outperforming the Clifton Public Schools and state averages in English language arts (ELA) and mathematics," thus meeting the academic section of the Performance Framework.

In the category of fiscal performance, the Department assessed the school's financial viability based on measures of near-term financial health, longer term financial sustainability, and fiscal-related compliance, and considered "the fiscal impact of the expansion on sending districts." According to the Commissioner, "[r]eview of the fiscal standing of Classical Academy indicates that it is fiscally sound and there are no foreseen financial issues with the granting of this amendment request."

In assessing organizational performance, the Commissioner found "[t]he amendment request describes the administrative capacity, performance management, and strategic plans for the expansion. After review of Classical Academy's request and annual report submissions, the Department has determined that Classical Academy has the capacity to support the requested amendment to the charter."

Based on these findings, the Commissioner approved the following maximum enrollment for Classical Academy:

| Grade Level | 2018-19 (current maximum) | 2019-2020 | 2020-2021 |
|---|---|---|---|
| 6 | 40 | 60 | 60 |
| 7 | 40 | 60 | 60 |
| 8 | 40 | 60 | 60 |
| Total | 120 | 180 | 180 |

Clifton appealed the Commissioner's determination. After Clifton filed its appeal, we permitted the Commissioner to submit an amplification of reasons in support of his February 1, 2019 decision.

In a June 14, 2019 amplification letter, the Commissioner addressed, in more detail, Clifton's concerns regarding Classical Academy's satisfaction of the Performance Framework. The Commissioner wrote:

> Each charter school amendment is holistically reviewed on its own merits, and Classical [Academy]'s request was no exception. Many factors are considered in rendering a final decision in accordance with N.J.S.A. 18A:36A et seq., with primary consideration given to the charter school's potential to improve pupil learning and ability to increase educational options available to New Jersey families. My decision to approve Classical [Academy]'s amendment request was informed by a review of student performance on statewide assessments, [organizational] stability, fiscal impact, demographic data, and public comment.

In addressing the Superintendent's comment regarding the fiscal impact on the district if enrollment at Classical Academy was increased, the Commissioner stated the Department considered both the financial viability of the school and the "fiscal impact of the expansion on sending districts." Because Clifton did not submit any "documentation demonstrating an adverse fiscal impact on the district," the Commissioner was unable to conclude "that there would be any such impact based on a detailed review of the record."

Regarding the Superintendent's statement addressed to Classical Academy's required organizational improvements, the Commissioner found the two items yet to be completed (curriculum maps and aligned assessments), were undergoing continual revision year-to-year, and that fact did not undermine his decision to approve the charter amendment, "especially in light of the school's academic performance."

In reviewing academic performance, the Commissioner reiterated Classical Academy achieved a Tier 1 rank during the years that were evaluated as part of the school's requested amendment. While Tier ranks for 2017-2018 had yet to be published, preliminary statewide assessment results suggested Classical Academy "continues to be a high-performing charter school."

In addressing Clifton's claim that Classical Academy students did not reflect the district's demographic profile, the Commissioner found the school demonstrated its admission policy, to the maximum extent practicable, sought to enroll "a cross-section of the community's school age population including racial and academic factors" in accordance with N.J.S.A. 18A:36A-8(e). He further determined Classical Academy demonstrated compliance with N.J.S.A. 18A:36A-7, requiring a charter school be open to all students, on a space available basis, and prohibiting discrimination in admission policies or practices on the basis of intellectual or athletic ability, status as a handicapped person, and proficiency in the English language.

Clifton moved to accelerate its appeal.[3] In a certification in support of accelerating the appeal, the Business Administrator and Board Secretary for the Clifton Board of Education (Business Administrator) provided additional information regarding the financial impact to the district if the Commissioner approved Classical Academy's charter amendment to increase enrollment.[4]

---

[3] We granted Clifton's motion to accelerate the appeal in a July 19, 2019 order.

[4] The Business Administrator failed to explain why the information contained in his certification was not provided to the Commissioner as part of Clifton's objections to Classical Academy's request to amend its charter.

According to the Business Administrator, Clifton operated two preschools, fifteen elementary schools, two middle schools, and one high school, serving over 10,965 students in the district. He explained revenue from the local tax levy, the main source of its general fund, totaled $131,825,892 in 2017-2018, and $133,094,682 in 2018-2019, and was projected to yield $134,259,260 in 2019-2020. Additionally, Clifton received $30,054,160 in state aid from the Department for the 2017-2018 school year, and $31,556,868 for the 2018-2019 school year. He stated that during this period, costs associated with Clifton's contractual obligations for employee benefits increased significantly.

The Business Administrator also indicated the Department allocated $3,786,448 in charter school aid in Clifton's general appropriations fund for the 2017-2018 school year, $6,074,332 for the 2018-2019 school year, and $8,076,553 for the 2019-2020 school year. As a result of the increased allocation of aid to charter schools for the 2019-2020 school year, the Business Administrator claimed Clifton would experience a net loss of $2,002,221 in total funding. He calculated Classical Academy's requested enrollment increase would remove approximately $800,000 from the district's proposed budget. The Business Administrator maintained the Department's "preliminary budget, including the portion of the budget accommodating Classical Academy's

A-2889-18T4

requested enrollment increase, will therefore have immediate and significant repercussions for the [d]istrict's costs."

On appeal, Clifton argues the Commissioner's decision approving increased student enrollment at Classical Academy was arbitrary, capricious, and unreasonable because the Commissioner failed to consider the fiscal impact the expansion would have on the school district's budget, disregarded Classical Academy's failure to meet performance standards, and failed to consider whether the school's demographics were representative of the district.

Our review of a final decision of the Commissioner on a charter school application is limited. In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013). We may reverse only if the Commissioner's decision "is arbitrary, capricious, or unreasonable." Ibid. In making that determination, our review is generally restricted to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Id. at 385-86 (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

"[T]he arbitrary, capricious, or unreasonable standard . . . subsumes the need to find sufficient support in the record to sustain the decision reached by the Commissioner." Id. at 386. "[A] failure to consider all the evidence in a record would perforce lead to arbitrary decision making." Ibid. However, "[w]hen the Commissioner is not acting in a quasi-judicial capacity," and is instead acting in his legislative capacity, as he was doing here, he "need not provide the kind of formalized findings and conclusions necessary in the traditional contested case." In re TEAM Acad. Charter Sch., 459 N.J. Super. 111, 140 (App. Div. 2019), certif. granted, ____ N.J. ____ (2020) (quoting In re Grant of Charter Sch. Application of Englewood on the Palisades Charter Sch., 320 N.J. Super. 174, 217 (App. Div. 1999), aff'd as modified, 164 N.J. 316 (2000)). Although the arbitrary, capricious, or unreasonable standard demands "that the reasons for the decision be discernible, the reasons need not be as detailed or formalized as an agency adjudication of disputed facts; they need only be inferable from the record considered by the agency." Ibid. See also In re Red Bank Charter Sch., 367 N.J. Super. 462, 476 (App. Div. 2004) (holding reasons need not be detailed or formalized, but must be discernible from the record).

Nor is there any statutory or regulatory provision requiring the Commissioner to include reasons for granting an application to amend a charter. TEAM Acad., 459 N.J. Super. at 140 (citing Englewood, 320 N.J. Super. at 217). Only in cases where an application to amend a charter is denied must the Commissioner provide detailed findings in support of the denial. See id. at 146.

Here, the record supports the Commissioner's decision to approve Classical Academy's request to amend its charter. The Commissioner considered Classical Academy's organizational and academic performance standards, and the school's demographics in comparison to the demographics of the district. Clifton's concerns regarding Classical Academy's deficiencies were adequately addressed in the Commissioner's June 14, 2019 amplification letter. Classical Academy was continuing to improve, as shown by the school's strong academic performance and removal from probationary status, which the Commissioner determined carried more weight under the Performance Framework analysis.

Clifton failed to provide any statistical evidence to support its position that students attending Classical Academy struggled in math upon returning to the district's schools. The Commissioner's initial decision and amplification letter concluded Classical Academy students out-performed students attending

district schools in standardized testing. He further noted that students enrolled in Classical Academy performed better on mathematical testing compared to students statewide.

Despite Clifton's failure to provide any statistical evidence to support its concerns regarding Classical Academy's demographic profile related to ELL and special needs students, in his amplification letter, the Commissioner determined the school complied with all statutory and regulatory requirements to ensure its admissions practices were non-discriminatory. The Commissioner found Classical Academy complied with charter school admissions policies and demonstrated an increased enrollment of disadvantaged and special needs students.

Having reviewed the record, the Commissioner thoroughly evaluated Classical Academy's application to increase enrollment and considered Clifton's objections to the requested enrollment increase. We are satisfied the Commissioner's decision was not contrary to his legislative authority and is supported by substantial evidence in the record.

We next consider Clifton's argument that the Commissioner failed to consider the fiscal impact on the district associated with an increase in enrollment of students at Classical Academy. Funding for charter schools is

provided by the school district of residence, which directly pays the charter school 90% of its program budget per pupil for each of its resident students enrolled in the school. N.J.S.A. 18A:36A-12(b). Despite this statutory limit on funding, case law requires that

> if the local school district "demonstrates with some specificity that the constitutional requirements of a thorough and efficient education would be jeopardized by [the district's] loss" of the funds to be allocated to a charter school, "the Commissioner is obligated to evaluate carefully the impact that loss of funds would have on the ability of the district of residence to deliver a thorough and efficient education."[5]
>
> [Quest Acad., 216 N.J. at 377-78 (quoting Englewood, 164 N.J. at 334-35).]

However, the district "must be able to support its assertions" regarding any fiscal impact. Englewood, 164 N.J. at 336. The Commissioner does not have "the burden of canvassing the financial condition of the district of residence in order to determine its ability to adjust to the per-pupil loss upon approval of the charter school based on unsubstantiated, generalized protests." Ibid. "[T]he Commissioner is entitled to rely on the district of residence to come forward

___

[5] Our State Constitution imposes an obligation on the Legislature to "provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years." N.J. Const. art. VIII, § 4, ¶ 1.

A-2889-18T4

with a preliminary showing that the requirements of a thorough and efficient education cannot be met." Id. at 334. "The legislative will to allow charter schools and to advance their goals suggests our approach which favors the charter school unless reliable information is put forward to demonstrate that a constitutional violation may occur." Id. at 336. See also TEAM Acad., 459 N.J. Super. at 142 (holding the district failed to "make any showing, much less a preliminary showing, on which the Commissioner could rely as to the effect the expansions would have on the District's budget").

Here, Clifton posited no specifics as to how district students would be deprived of a thorough and efficient education by the proposed expansion of students enrolled at Classical Academy. The Superintendent argued, without supporting documentation or financial data, that the increase in Classical Academy's student population would "remove an additional $750,000" from the district's proposed 2019-2020 budget, "forcing the possible elimination of some key programs."

Even if Clifton provided such information in objecting to Classical Academy's charter amendment, Clifton failed to demonstrate the requirements of a thorough and efficient education could not be met as a result of sixty additional charter school seats in a district that serves over 10,965 students. Nor

did Clifton establish how an estimated loss of $800,000, from a total budget of $170 million, would deprive district students of a thorough and efficient education. The Commissioner was not required to evaluate the loss of funds to the district. Clifton failed to satisfy its burden by demonstrating how expansion of enrollment at Classical Academy by sixty students would prevent delivery of a thorough and efficient education.

In sum, we affirm the Commissioner's decision allowing Classical Academy to amend its charter and increase student enrollment by sixty students for the 2019-2020 and 2020-2021 school years. The decision was not arbitrary, capricious, or unreasonable, promoted the legislative intent of the CSPA, and was amply supported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19